JOHN LEAVITT *vs.* GEORGE E. LEIGHTON.

Suffolk.   October 6, 1914. — October 29, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Payment.   Bills and Notes.*

If a wine merchant asks the steward of a hotel for a payment on account of the indebtedness to him of the lessee of the hotel, and the steward gives the wine merchant a check for $500 drawn on a bank account in the steward's own name and dated ten days ahead, and before the date of the check the lease of the lessee of the hotel is terminated and the wine merchant is informed that such former lessee has ceased to have any interest in the bank account kept in the name of the steward, this does not deprive the wine merchant of his right to deposit the check for collection on .the day of its date and apply the proceeds to the payment of the indebtedness of the former lessee of the hotel to him.

CONTRACT for $192.75, the price of wines and liquors sold and delivered to the defendant. Writ dated May 19, 1913.

The defendant filed a declaration in set-off for money had and received amounting to a balance of $165.51, alleging that the defendant through one McGrath gave to the plaintiff McGrath's check for $500 as a deposit to secure payment for goods to be ordered for the Hotel Westminster in Boston, but that the plaintiff applied the proceeds of the check upon the previous indebtedness to him of one Gleason, although informed that the money

represented by the check belonged to the defendant and not to Gleason, and that the plaintiff afterwards furnished goods for the hotel amounting to $334.49, leaving a balance of $165.51 in the plaintiff's hands belonging to the defendant, which the defendant demanded on May 3, 1913, claiming interest thereon from that date.

In the Superior Court the case was tried before *Bell,* J. He submitted to the jury certain questions, all of which they answered in the affirmative. The only one of these questions now material is quoted in a footnote referred to in the opinion. The judge ordered a verdict for the plaintiff on the plaintiff's declaration in the sum of $192.75, and on the defendant's declaration in set-off ordered a verdict for the plaintiff and reported the case for determination by this court upon the facts which are stated in the opinion. If the ordering of the verdict on the declaration in set-off was correct, the verdicts were to stand. If it was incorrect, judgment was to be entered for the defendant on his declaration in set-off in the sum of $149.98, with interest from May 1, 1913, and upon the plaintiff's declaration judgment was to be entered for the defendant.

*H. Williams, Jr.,* (*L. C. Bigelow* with him,) for the defendant.

*A. W. Putnam,* for the plaintiff.

LORING, J. The only question on this report arises under the defendant's declaration in set-off. The undisputed facts were in substance these: For some time before April 8, 1913, one Gleason had been the lessee of the Hotel Westminster. On that day the defendant and another, who were the legal owners of the hotel, brought the lease to an end for breach of condition. Thereafter the defendant "personally kept the hotel running through the agency of McGrath until May 1 when a new lease could be negotiated with McGrath or some one else."

On April 1 Gleason owed the plaintiff for wines and liquors to an amount not stated in the report. On or about April 2, "the plaintiff's salesman called and asked for a payment on Gleason's account, and McGrath drew a check for $500 dated April 12 and gave it to the plaintiff."

This check was drawn on an account in the Exchange Trust Company opened by McGrath "on or about April 1, 1913." It is stated in the report that McGrath deposited to the credit

of this account "some of his own money." It is also stated that "thereafter [he] deposited in it the receipts of the hotel, which up to April 8 belonged to Gleason, and paid the bills of the hotel out of it." It is further stated in the report that McGrath (on or about April 1, when the account was opened) "was employed as steward at the hotel," and "was planning to become a partner of Gleason or else to become the sole lessee of the hotel in place of Gleason on the succeeding May first."

McGrath, while running the hotel as the defendant's agent after April 8, used his own bank account opened on April 1, 1913, as stated above.

On April 12, 1913, the plaintiff deposited McGrath's check for $500 in his own bank, and it went through the clearing house on April 14. The check was not returned to the trust company before one o'clock, and by the rule of the clearing house the payment thus made became absolute at that time.

It is stated in the report that at the close of the evidence there were two facts only in dispute. The first related to the time when two checks (paid over the counter and amounting together to $325) were paid. The jury found that they were paid before the payment of the $500 check here in question became absolute at one o'clock. It is admitted that under these circumstances "there was in that bank account only $15.53 of the money deposited before April 8 and not the defendant's money. . . . The other matter in dispute was whether the plaintiff had knowledge when he deposited his check for payment that Gleason had ceased to have any interest in this bank account after April 8." In answer to a question put to them the jury found that he had.* On these two facts being found by the jury in favor of the defendant the judge directed (1) a verdict for the plaintiff in the original action, about which, apart from the questions arising under the declaration in set-off there was no dispute; and (2) a verdict for the plaintiff in the declaration in set-off; and he reported the case to this court.

---

* The question put to the jury and answered by them in the affirmative was in these words: "5. Was the plaintiff, before he cashed the check No. 4 for $500 signed by John J. McGrath, which he applied to Gleason's account, informed that Gleason had ceased to have any interest in the McGrath bank account?"

On these facts the defendant contends (first) that he is entitled to recover the $500 paid on this check, as money paid under a mistake of fact; or rather he concedes that he is not entitled to recover the whole $500. His position is that he is entitled to recover $500 less $15.53. "This $15.53 the defendant admitted was rightfully applied by the plaintiff to the reduction of Gleason's account, thus reducing the defendant's claim in set-off." In the second place the defendant contends (to quote his own words) that the plaintiff "should repay him his money which Leavitt [the plaintiff] took and applied to pay Gleason's debt, with knowledge that the conditions had changed and that he had no right so to apply it."

1. These facts fail to disclose any mistake made in the payment of McGrath's check for $500. It may be that it was an act of carelessness or of stupidity on the defendant's part to allow the receipts derived from running the hotel after April 8 (which were his) to be deposited to the credit of McGrath's bank account. In the sense that it is a mistake to be careless or stupid there was a mistake in this matter. But that did not make out a mistake in the payment of McGrath's check for $500. The defendant has failed to prove that a mistake was made by any one in the payment of that check.

2. On these facts it is not true (as the defendant contends) that the plaintiff cashed McGrath's check "with knowledge . . . that he had no right . . . to apply" the proceeds in payment of Gleason's debt to him. In the first place it was not shown that the plaintiff, in taking McGrath's check for Gleason's debt, took it as Gleason's check drawn by McGrath as his (Gleason's) agent. Not only is it true that that fact was not established, but it is also true that it was not established that that was the fact. All that was established was that "the plaintiff's salesman called and asked for a payment on Gleason's account, and McGrath drew a check for $500 dated April 12 and gave it to the plaintiff." Why and under what arrangement McGrath gave a check on his bank account in payment of Gleason's debt was not established. It was established that that bank account was not Gleason's bank account. It is stated that when it was opened McGrath deposited in it "some of his own money." How much is not stated.

Under these circumstances the finding that the plaintiff was "informed that Gleason had ceased to have any interest in the McGrath bank account" before he cashed McGrath's check for $500 was beside the mark. It was McGrath's check (not Gleason's) which was given to the plaintiff. There is no suggestion that the plaintiff was informed that McGrath had ceased to have any interest in the bank account before the check was drawn by him (McGrath). The defendant has failed to establish the fact that the plaintiff had no right to apply the check to the payment of Gleason's debt, much less that he had knowledge of that fact.

It is not necessary to consider other objections in the way of the defendant's recovering on his declaration in set-off.

In accordance with the terms of the report the entry must be

*Verdicts to stand.*